### JAMES NATIONS v. JOHN G. JONES.

Quere, as to the extent of a warranty of soundness of mind, in the sale of a slave. We believe there was no error in charging the jury to find for the plaintiff unless there was proof of absolute idiocy of the slave; and if there were error, yet the facts were such as to have required a verdict for the plaintiff.

Error from Gonzales. Tried below before the Hon. Fielding Jones.

Defendant requested the Court to charge the jury, that a warranty of soundness in mind and body in a slave, covers all defects, whether defendant knew the defects or not; and that if they believed that the slave was so weak and stupid at the time of warranty as to lessen his value, they should reduce the amount of the note accordingly. These charges were refused. The other facts are stated in the Opinion.

*Stewart & Mills,* for plaintiff in error. I. We think the charge given erroneous upon principle and authority. (Icar v. Luar, 7 La. R. 517; Landnaux v. Campbell, 20 Mart. 478.)

Any organic defect is an unsoundness within the warranty; (Best v. Osburne, Ry. & M. 290, cited in Chitty, Con. page 403;) and if there be a breach, an abatement of the price was proper. (Mixer v. Coburn, 11 Metcalf, 561; 22 Pick. 510; 14 Pick. 198; 4 Wend. 483; 8 Cowen, 31.)

II. If there be an express warranty as to the title and quality and soundness, the purchaser rarely buys at his own risk. (Story on Sales, Sec. 349; 2 Kent, 478.) But it may be said defects which are plain to the senses are not included in the warranty; be that as it may, if the defect be such as may or may not be

permanent unsoundness or defect, in that case the effect of the warranty will be that it is not such a defect as amounts to permanent and incurable unsoundness. (Margetson v. Wright, 8 Bing. 454.)

Notwithstanding some earlier views (see Butler's note (1) to Co. Litt. 384, a) it is now well settled in America, that the seller will be liable on his covenant against defects, although the buyer knew the existence of the defect at the time of sale. (Townsend v. Weld. 8 Mass. 146; Harlow v. Thomas, 15 Pick. 66; Hubbard v. Norton, 10 Cowen, 431; Dunn v. White, 1 Ala. 645; Cathcart v. Bowman, 5 Barr, 31; 22 Pick. 485; 2 Rich. 361.)

III. The new trial should have been awarded. As to what witness Green, for plaintiff, testified at the time of the sale, about the seller's remark that the slave was "a chuckle-headed fool," the Court will easily see that defendant's reply, viz: "that Henry was just the negro to suit him," was really the answer to Jones's assurance and representation "that he (the slave) had sense enough to do what he was told."

*Fly & Fly,* for defendant in error. This case is evidently brought up for delay. The verdict is fully sustained by the evidence.

Small mental powers do not constitute unsoundness of mind any more than diminutive physical structure is unsoundness of body.

Defendant kept the slave for a year, until sued for the price. (Chit. Con. 403.)

The charge of the Court was correct. The refusal of the Court to give the charge desired by defendant did him no injustice. There was no error in the refusal of the Court to grant a new trial.

It is also decided that if the Court err in giving or refusing a charge; yet if substantial justice is done to the parties, the judgment will be affirmed. (2 Tex. R. 284; 1 Id. 443.)

HEMPHILL, CH. J. This suit was to recover on a note given for the purchase money of a slave warranted to be sound of body and mind.

The defence by Nations, the maker of the note, was that the negro was not sound of mind; but that, on the contrary, he was unsound; that he was in fact an idiot, and that he, the defend-

ant, had no knowledge of the unsoundness of mind of the slave at the time of the sale. It was in evidence by a physician who examined the boy Henry (the name of the slave) three weeks before the trial, that the boy had but little mental development; that his mind was of a low grade, not an idiot, but between uncommon stupidity and idiocy; that he had but little intellect, but that little was sound; it was not the result of disease, but of mental imbecility or want of development. It was also in proof by an overseer of defendant, that the boy was too deficient in understanding to do work on a plantation; was about half a hand. On the part of the plaintiff, it was proven that the defendant, some months after the sale, said the boy was worth $1000, which was the price agreed upon at the sale. A witness had employed the boy in his brick-yard for six months previous to the sale, giving for him one dollar per day; and he thought the boy was worth $20 per month, and was a good hand. There was also other proof, showing that the boy was an average hand; and one witness, who had known him from childhood, thought he was worth $1200. It was also proven that preliminary to the sale, there was a conversation between plaintiff and defendant, in which the plaintiff distinctly informed the defendant that the boy was a fool-headed negro; that he was a chuckle-headed fool, and would not suit; that he had sense enough to do any thing he was told. To which the defendant immediately replied, " That was the kind of a negro he wanted;" and that the defendant then went and examined the negro.

The Court charged in substance, that the jury should find for plaintiff, unless from the evidence it appeared that the boy was an absolute idiot at the time of the sale.

Judgment for plaintiff, which has been brought up by a writ of error.

We are of opinion that there was no error in the judgment. What may be the extent of a warranty of soundness of mind, or what may be the exact meaning of the phrase soundness of mind, it will not be necessary to consider with much or close scrutiny. Whether it may merely negative absolute idiocy, or a minor degree, but still a variety of idiocy, or a grade of mind between idiocy and imbecility, may be left for cases in which the precise signification of the terms must be ascertained.

But in this case it appears from the preponderance of the evidence, that the boy, as to his mental qualities, was just such a boy as the defendant wished and designed to purchase. He de-

sired to have a chuckle-headed fool, that had just sense enough to do what he was told. The boy purchased suited very nearly the description and qualities of the slave wished by the defendant. He complains that the slave had a little more of the valuable quality of mental weakness than he bargained for or intended to purchase. But the evidence does not support his assumptions; on the contrary, the weight of the testimony is, that the boy was not perhaps quite so much of a fool as was represented by the plaintiff or desired by the defendant at the time of the sale. Under the facts we believe there was no error in charging for the plaintiff, unless there was proof of absolute idiocy of the slave; and if there were error, yet the facts were such as to have required a verdict for the plaintiff.

Judgment affirmed.